IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DONNA BUTCHER, MELLIE BUCHANON,                                    **PLAINTIFFS**
HATTIE STOVALL, JESSICA KIZER,
KENNETTA JOINER AND ANDREA MCTIGRIT,
Individually and on behalf of others similarly situated

VS.                                    CASE NO. 5:12-CV-241SWW

DELTA MEMORIAL HOSPITAL                                    **DEFENDANT**

## DEFENDANT'S BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Comes the defendant, Delta Memorial Hospital, and for its Brief in Support of Motion for

Summary Judgment, states:

### I.

### BACKGROUND

Six plaintiffs filed a Complaint against the defendant, Delta Memorial Hospital,

making various allegations to the effect that defendant violated the Fair Labor Standards Act

("FLSA").  As will be demonstrated below, there is an unending hodgepodge of inconsistency

between the allegations in the Complaint, the plaintiffs' discovery responses and the plaintiffs'

declarations.[1]

**A.    Summary of the Plaintiffs' Allegations and the Defendant's Response Thereto**

1.    **The Time Clock.**

a)    Summary of the plaintiffs' allegations about the time clock.

---

[1] The term "declarations" refers to the declarations filed by plaintiffs in support of their Motion to certify the case as a collective action. The declarations are attached to plaintiffs' Motion as Exhibits one through five.

Four plaintiffs (Butcher, Buchanon, Stovall and Kizer) allege in their Complaint that they sustained damages because defendant's time clock rounded up or down.  (See Plaintiffs' Complaint, ¶¶ 19, 24, 36, and 41.)  Two of the plaintiffs (Joiner and McTigrit) do not make such an allegation.

b)      Summary of the defendant's position about the time clock.

The defendant admits that its time clock rounds up and rounds down.  (See Exhibits 12 – 27.)  In her Affidavit, the defendant's former administrator, Cris Bolin, describes the time clock procedure as follows:

> *Delta Memorial Hospital's time clock is set to round to the nearest 15-minute interval, based on an 8-minute rounding rule.  The clock rounds both up and down.  For example:  If an employee clocks in at 7:49 for an 8:00 shift start, then the clock rounds down to 7:45 or if an employee clocks out at 3:52, then the clock rounds up to 4:00.*

(See Exhibit 12.)

As explained later in this Brief, this procedure is not a violation of any law or regulation. In addition, the Department of Labor (the "DOL") just reviewed this practice as part of a DOL audit and did not find any violation of any law or regulation. (See Exhibit 12.)

2.      **Clocking In Early.**

a)      Summary of the plaintiffs' allegations about clocking in early.

Three plaintiffs (Buchanon, Stovall and Kizer) allege in their Complaint that they were required to arrive at work well before their shift started.  (See Plaintiffs' Complaint, ¶¶ 24, 36, and 41.)  Two of the plaintiffs (Joiner and McTigrit) do not make such an allegation.

There is no mention of any facts to support these allegations in the declarations filed by any of the plaintiffs[2].

b)      Summary of the defendant's position about clocking in early.  In support of its Motion, the Defendant has attached affidavits making a prima facie case that no hourly, non-exempt employee was required to start work before they clocked in.

In support of its Motion, defendant has attached affidavits making a prima facie case showing that it was not "confronted", "notified" or "aware" of any such instance and further demonstrating that it was not aware of any facts that would put defendant on notice. (See Exhibits 12 – 27.)

The allegations about starting work before clocking in are disputed by a total of 16 supervisory employees.  (See Exhibits 12 – 27.)

3.      **Clocking Out Late.**

a)      Summary of the plaintiffs' allegations about clocking out late.

Four plaintiffs (Butcher, Buchanon, Stovall and Kizer) allege in the Complaint that they were required to stay late after clocking out at the end of their shift.  (See Plaintiffs' Complaint, ¶¶ 19, 24, 36, and 41.)

There is no mention of any facts to support these allegations in the declarations filed by any of the plaintiffs[3].

---

[2] The declarations of Butcher and Stovall do contain conclusory statements to the effect that they sometimes worked more than 40 hours per week without additional compensation.  However, the declarations never specifically mention the allegation about starting work before clocking in and do not indicate the basis for the conclusory statements.

[3] The declarations of Butcher and Stovall do contain conclusory statements to the effect that they sometimes worked more than 40 hours per week without additional compensation.  However, the declarations never specifically mention the allegation about working after clocking out and do not indicate the basis for the conclusory statements.

b)      <u>Summary of the defendant's position about clocking out late</u>.  The Defendant has attached affidavits making a prima facie case that no hourly, non-exempt employee was required to continue working after they clocked out.

In support of its Motion, defendant has attached affidavits making a prima facie case that it was not "confronted", "notified" or "aware" of any such instance and further demonstrating that defendant was not aware of any facts that would put defendant on notice. (See Exhibits 12 – 27.)

The allegations about working after clocking out are disputed by a total of 16 supervisory employees.  (See Exhibits 12 – 27.)

### 4.      **The Lunch Break Allegations**.

a)      <u>Summary of the plaintiffs' allegations about not being paid for lunch breaks</u>.

Six plaintiffs (Butcher, Buchanon, Stovall, Kizer, McTigrit and Joiner) allege that they sustained damages because they sometimes had to work through their lunch break and that they were not compensated because defendant's time clock automatically deducted thirty minutes for a lunch break.

b)      <u>Summary of the defendant's position about the lunch break allegations</u>.

The defendant admits that its time clock automatically deducts thirty minutes for a lunch break.  As explained later in this Brief, this procedure is not a violation of any law or regulation. In addition, the Department of Labor (the "DOL") just reviewed this practice as part of a DOL audit and did not find any violation of any law or regulation. (See Exhibit 12.)

In support of its Motion, the defendant has attached affidavits making a prima facie case that hourly, non-exempt employees who failed to take a lunch break were supposed to notify their supervisor so an adjustment could be made.  (See Exhibits 12 – 27.)

In support of its Motion, defendant has attached affidavits making a prima facie case that it was not "confronted", "notified", or "aware" that any hourly, non-exempt employee worked through lunch without compensation and further demonstrating that it was not aware of any facts that would put defendant on notice. (See Exhibits 12 – 27.)

The lunch break allegations are disputed by a total of 16 supervisory employees. (See Exhibits 12 – 27.)

### 5.    The Over-Time Allegations.

a)    Summary of the plaintiffs' allegations about over-time.

Six plaintiffs (Butcher, Buchanon, Stovall, Kizer, McTigrit and Joiner) make a general allegation that they were required to work over time without proper compensation. (See Plaintiffs' Complaint, ¶¶ 21, 29, 38, 46, 52, and 58.)

This allegation is mentioned in a conclusory way in the declarations of Butcher (Exhibit 1) and Stovall (Exhibit 3), but is not mentioned in the other declarations except in connection with the lunch break allegations.

b)    Summary of the defendant's position about the over-time allegations.

In support of its Motion, the defendant has attached affidavits making a prima facie case that no hourly, non-exempt employee worked over time without proper compensation. (See Exhibits 12 – 27.)

In support of its Motion, the defendant has attached affidavits making a prima facie case that it was not "confronted", "notified" or "aware" that any hourly, non-exempt employee worked over time without proper compensation and further demonstrating that it was not aware of any facts that would put defendant on notice. (See Exhibits 12 – 27.)

The over-time allegations are disputed by a total of 16 supervisory employees.  (See Exhibits 12 – 27.)

**B.**     **Inconsistencies Associated with the Plaintiffs' Complaint, the Plaintiffs' Declarations and the Plaintiffs' Responses to Discovery**

As will be demonstrated later in this Brief, a plaintiff cannot defeat a properly documented Motion for Summary Judgment with affidavits drafted by an attorney which contradict plaintiffs' discovery responses.  Thus, the following inconsistencies are important.

    **1.**     <u>**The Kizer Declaration.**</u>

    a)     The relevant portions of Jessica Kizer's declaration state as follows:

> *4.     Due to understaffing issues and the general business of the hospital, I almost never received my thirty minute meal breaks. Delta, however, automatically deducted thirty minutes each day from my time for my meal breaks, even when I had not taken a lunch.*

> *5.     While employed by Delta Memorial I was never made aware of any system which would have allowed me to reclaim this automatically deducted time.*

> *6.     Taking into account the meal time I was automatically deducted for, I usually worked in excess of 40 hours a week, but was not compensated for this time.*

(See Exhibit 4.)

    b)     The Kizer declaration is dramatically inconsistent with Kizer's Complaint in that it does not contain any factual support for any of the allegations made by Kizer in her Complaint other than the lunch break allegation.

Apparently, Kizer is now abandoning nearly all of her initial allegations, but to the extent she is not abandoning these allegations, the affidavits attached to defendant's motion make a prima facie case showing that defendant is entitled to Summary Judgment.

c)      Regarding Kizer's claim that she worked through lunch without compensation, Kizer's declaration is inconsistent with Kizer's responses to discovery.

Specifically, Kizer's declaration never states that she properly applied for the additional lunch compensation and that it was denied.  Instead, Kizer states that she was "not aware" of any system that would "allow employees to reclaim this automatically deducted lunch time." However, this is directly contradictory of Kizer's responses to discovery where Kizer states, in part, as follows:

> INTERROGATORY NO. 3:  If you contend that you worked through your lunch break without compensation, then state whether you ever notified your supervisor that your time card needed to reflect an adjustment for that event and, if so, please identify each such occasion, including the approximate date of each such occasion, the name of each such supervisor that you notified and all other Identifying Information associated with each such notification.

> RESPONSE:  Objection.  This Interrogatory is broad and overly burdensome.  Plaintiff cannot be expected to recall the dates of every communication she had with her supervisor requesting an adjustment to her time . . . Defendant is in possession of any adjustment sheets completed by plaintiffs.

(See Exhibit 9.)

(Incredibly, Kizer's response to discovery specifically referred to the specific "adjustment sheets" that employees were supposed to use to request an adjustment and went on to state that she could not recall the dates of "every communication . . . requesting an adjustment . . ."

Obviously, this answer directly contradicts Kizer's sworn declaration and it demonstrates that, in fact, Kizer was aware that the hospital had a system in place for "requesting an adjustment."

These inconsistencies cast serious doubts on Kizer's credibility, to the point that no weight should be given to Kizer's declaration.

d)      Kizer's declaration does not contain any factual basis to support a finding that defendant "knew or should have known" that Kizer was not taking her lunch break.  This is critically important because hospital employees normally took their lunch breaks at irregular times and defendant had no way to know when or if an employee took a lunch break unless the employee notified her supervisor.

**2.      The Joiner Declaration.**

a)      The plaintiff, Kennetta Joiner did not file a declaration.

b)      However, Joiner's responses to discovery are significant because Joiner, like Kizer, admits that she was aware that a system existed for employees to claim additional compensation if they worked through lunch.  Joiner's responses to discovery state, in part, as follows:

> *INTERROGATORY NO. 3: If you contend that you worked through your lunch break without compensation, then state whether you ever notified your supervisor that your time card needed to reflect an adjustment for that event and, if so, please identify each such occasion, including the approximate date of each such occasion, the name of each such supervisor that you notified and all other Identifying Information associated with each such notification.*
>
> *RESPONSE: Objection. This Interrogatory is broad and overly burdensome. Plaintiff cannot be expected to recall the dates of every communication she had with her supervisor requesting an adjustment to her time.*

(See Exhibit 11.)

Joiner stated that she could not recall the dates of "every communication . . . requesting

an adjustment to her time . . ."  Obviously, this answer demonstrates that Joiner was aware that

the hospital had a system in place for "requesting an adjustment."

    **3.**     **The Buchanon Declaration.**

    a)     The relevant portions of Mellie Buchanon's declaration state as follows:

> *4.     Because of understaffing issues and the amount of business in the facility, I hardly ever had time to take a meal break.  Delta, however, automatically deducted thirty minutes for my meal breaks each day, regardless of whether I took my lunch or not.*

> *5.     Throughout my employment I was only able to reclaim the lunch time deducted from me on a few occasions.  Despite missing my lunch almost every day, I was never able to reclaim it consistently.*

(See Exhibit 2.)

    b)     The Buchanon declaration is dramatically inconsistent with Buchanon's

Complaint in that it does not contain any factual support for many of the allegations made by

Buchanon in her Complaint.

Specifically, Buchanon's declaration only refers to her allegation that she worked through

lunch without compensation.  Apparently, Buchanon is now abandoning nearly all of her initial

allegations, but to the extent she is not abandoning these allegations, the affidavits attached to

defendant's motion make a prima facie case showing that defendant is entitled to Summary

Judgment.

    c)     Regarding Buchanon's claim that she worked through lunch, Buchanon admits

that there was a system for getting compensated when an employee missed lunch.  (See

Buchanon's declaration where she admits that she was able to get paid for missing lunch on a

"few occasions"/Also see Exhibit 7, Buchanon's Response to Interrogatory No. 3, where Buchanon states that she requested an adjustment on "several occasions.")

However, what is absent from the Buchanon declaration is any statement that there was actually any occasion when she *properly requested an adjustment and no additional compensation was paid*.  More specifically, while Buchanon says that she was not "able to reclaim it consistently," Buchanon does not state whether that was due to her own inaction or failure to follow proper procedure.

d)      Buchanon's declaration does not contain any factual basis to support a finding that defendant "knew or should have known" that Buchanon was not taking her lunch breaks.  This is critically important because hospital employees normally took their lunch breaks at irregular times and defendant had no way to know when or if an employee took a lunch break unless the employee notified her supervisor.

4.      **The Butcher Declaration.**

a)      The relevant portions of Donna Butcher's declaration state as follows:

> 4.      *Due to understaffing and the amount of business the facility received, I was almost never able to take my meal break.  Delta, however, automatically deducted thirty minutes from my pay for my meal break, even when I did not receive it.*

> 5.      *I was never made aware of any system that would have enabled me to reclaim this lost time.*

> 6.      *I frequently worked more than 40 hours per week while employed by Delta Memorial Hospital, but was not compensated for all hours over forty.*

(See Exhibit 1.)

b)     The Butcher declaration is dramatically inconsistent with Butcher's Complaint in that it does not contain any factual support for many of the allegations made by Butcher in her Complaint.

Specifically, Butcher's declaration only refers to her allegation that she worked through lunch without compensation and it contains a conclusory statement that she worked more than 40 hours per week while only being paid for 40 hours.  Apparently, Butcher is now abandoning nearly all of her initial allegations, but to the extent she is not abandoning these allegations, the affidavits attached to defendant's motion make a prima facie case showing that defendant is entitled to Summary Judgment.

c)     Regarding Butcher's claim that she worked through lunch without compensation, Butcher's declaration is inconsistent with Butcher's responses to discovery.

Specifically, Butcher's declaration stating that she "*was never made aware* of any system, which would have enabled me to reclaim this lost time," directly contradicts Butcher's responses to discovery where Butcher states, in part, as follows:

> *INTERROGATORY NO. 3:*  If you contend that you worked through your lunch break without compensation, then state whether you ever notified your supervisor that your time card needed to reflect an adjustment for that event and, if so, please identify each such occasion, including the approximate date of each such occasion, the name of each such supervisor that you notified and all other Identifying Information associated with each such notification.

> *RESPONSE:*  Objection. This Interrogatory is broad and overly burdensome.  Plaintiff cannot be expected to recall the dates of every communication she had with her supervisor requesting an adjustment to her time.

(See Exhibit 6.)

Butcher stated that she could not recall the dates of "every communication . . . requesting an adjustment . . ." Obviously, this answer demonstrates that Butcher was aware that the hospital had a system in place for "requesting an adjustment" and casts serious doubts on Butcher's credibility.

As stated previously, some of the plaintiffs admit that, in fact, there were adjustment sheets that employees were supposed to use to make a claim for additional compensation if they worked through lunch.

Since her co-workers clearly were aware that the hospital had a procedure in place for requesting additional compensation, it strains credulity for Butcher to declare, under oath, to this Court that she was totally unaware of this system, particularly when it is clear from her responses to discovery that she was aware of the system.

d)      Butcher's declaration does not contain any factual basis to support a finding that defendant "knew or should have known" that Butcher was not taking her lunch break.  This is critically important because hospital employees normally took their lunch breaks at irregular times and defendant had no way to know when or if an employee took a lunch break unless the employee notified her supervisor.

5.      **The Stovall Declaration.**

a)      The relevant portions of Hattie Stovall's declaration state as follows:

> 4.      *Due to understaffing and the business of the facility, I was almost never able to take my thirty minute lunch break, and was instead required to eat while working.  Despite seldom getting an uninterrupted meal break, Delta automatically deducted thirty minutes from pay each day for my meal break, regardless of whether I had actually taken a lunch or not.*
>
> 5.      *There was no system, of which I was aware, to allow employees to reclaim this automatically deducted lunch time.*

> 6.    While at Delta Memorial I frequently worked in excess of
> 40 hours a week, but was not compensated for this time.

(See Exhibit 3.)

b)    The Stovall declaration is dramatically inconsistent with Stovall's Complaint in

that it does not contain any factual support for many of the allegations made by Stovall in her

Complaint.

Specifically, Stovall's declaration only refers to her allegation that she worked through

lunch without compensation and it contains a conclusory statement that she worked more than 40

hours per week while only being paid for 40 hours.   Apparently, Stovall is now abandoning

nearly all of her initial allegations, but to the extent she is not abandoning these allegations, the

affidavits attached to defendant's motion make a prima facie case showing that defendant is

entitled to Summary Judgment

c)    Regarding Stovall's claim that she worked through lunch without compensation,

Stovall's declaration is inconsistent with Stovall's responses to discovery.

Specifically, Stovall's declaration states that she was "<u>not aware</u>" of any system that

would "allow employees to reclaim this automatically deducted lunch time."   This is directly

contradictory of Stovall's responses to discovery where Stovall states, in part, as follows:

> *INTERROGATORY NO. 3:   If you contend that you worked*
> *through your lunch break without compensation, then state*
> *whether you ever notified your supervisor that your time card*
> *needed to reflect an adjustment for that event and, if so, please*
> *identify each such occasion, including the approximate date of*
> *each such occasion, the name of each such supervisor that you*
> *notified and all other Identifying Information associated with each*
> *such notification.*
>
> *RESPONSE:   Objection.   This Interrogatory is broad and overly*
> *burdensome.   Plaintiff cannot be expected to recall the dates of*

> *every communication she had with her supervisor requesting an*
> *adjustment to her time.*

(See Exhibit 8.)

Stovall stated that she could not recall the dates of "every communication . . . requesting

an adjustment . . ." Obviously, this answer demonstrates that Stovall was aware that the hospital

had a system in place for "requesting an adjustment" and casts serious doubts on Stovall's

credibility.

d)     Stovall's declaration does not contain any factual basis to support a finding that

defendant "knew or should have known" that Stovall was not taking her lunch break.  This is

critically important because hospital employees normally took their lunch breaks at irregular

times and defendant had no way to know when or if an employee took a lunch break unless the

employee notified her supervisor.

**6.     The McTigrit Declaration.**

a)     The relevant portions of Andrea McTigrit's declaration state as follows:

> *4.     Due to understaffing and the business of the facility, I*
> *seldom took my thirty minute lunch break, and was instead*
> *required to eat while working.  Despite this, Delta automatically*
> *deducted thirty minutes from pay each day for my meal break,*
> *regardless of whether I had actually taken a lunch or not.*

> *5.     Over the course of my employment with Delta Memorial*
> *Hospital I was only able to reclaim my lunch time on a few*
> *occasions.  I was never able to reclaim this time consistently*
> *despite the fact that I had to work through my lunch break almost*
> *every day.*

> *6.     Taking into account the meal time I was automatically*
> *deducted for, I frequently worked in excess of 40 hours a week, but*
> *was not compensated for this time.*

(See Exhibit 5.)

b)      The McTigrit declaration is dramatically inconsistent with McTigrit's Complaint in that it does not contain any factual support for many of the allegations made by McTigrit in her Complaint.

Specifically, McTigrit's declaration only refers to her allegation that she worked through lunch without compensation.  Apparently, McTigrit is now abandoning nearly all of her initial allegations, but to the extent she is not abandoning these allegations, the affidavits attached to defendant's motion make a prima facie case showing that defendant is entitled to Summary Judgment.

c)      Regarding McTigrit's claim that she worked through lunch, McTigrit admits that there was a system for getting compensated when an employee missed lunch.  (See McTigrit's declaration where she admits that she was able to get paid for missing lunch on a "few occasions"/Also see Exhibit 10, McTigrit's Response to Interrogatory No. 3, where McTigrit states that she requested an adjustment on "several occasions."

However, what is absent from the McTigrit declaration is any statement that there was actually any occasion when *she requested an adjustment and no additional compensation was paid*.  More specifically, while McTigrit says that she was "not able to reclaim this time consistently," McTigrit does not state whether that was due to her own inaction or failure to follow proper procedure.

d)      McTigrit's declaration does not contain any factual basis to support a finding that defendant "knew or should have known" that McTigrit was not taking her lunch break.  This is critically important because hospital employees normally took their lunch breaks at irregular times and defendant had no way to know when or if an employee took a lunch break unless the employee notified her supervisor.

## II.

### NO GUINUINE ISSUE OF FACT EXISTS AND DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW

Based upon the pleadings, affidavits, responses to discovery and other Exhibits properly before the Court, it is clear that there is no genuine issue to be tried because plaintiffs' allegations are conclusory and without any basis in fact or law.

As a result thereof, the defendant is entitled to a Summary Judgment or in the alternative to a Partial Summary Judgment on some issues.

## III.

### SUMMARY JUDGMENT STANDARD

It is well established that Summary Judgment is a valid tool for the court to utilize to protect a party from the burdensome expense of unnecessary or frivolous litigation. This is particularly applicable in this case due to defendant's precarious financial position. See Lyons v. Board of Education, 523 F.2d 340, 347 (8th Circ. 1975) (Summary Judgment is a procedure which advances the objective of avoiding a useless, expensive and time consuming trial where there is no genuine material fact issue to be tried").

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Summary Judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. Holloway v. Lockhart, 813 F.2d 874

(8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial

courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is
> a need for trial – whether, in other words, there are genuine factual
> issues that properly can be resolved only by a finder of fact because
> they may reasonably be resolved in favor of either party,

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 250 (1986).

As a prerequisite to summary judgment, a moving party must demonstrate "an absence of

evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U. S. 317, 325

(1986). Once the moving party has properly supported its motion for summary judgment, the

non-moving party must "do more than simply show there is some metaphysical doubt as to the

material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U. S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must

"come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. at 587

(quoting Fed. R. Civ. P. 56(e)).

"[A] genuine issue of material fact exits if: (1) there is dispute of fact; (2) the disputed

fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable

jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49

F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be

viewed in the light most favorable to the party opposing the motion. Matsushita, 475 U. S. at

587 (citations omitted).

The inconsistencies in the plaintiffs' declarations and plaintiffs' responses to discovery

are important because when such a conflict exists the statement in the affidavit or declaration

should be disregarded unless it is clear that the prior inconsistent statement was mistaken.  See

Russell v. ACME- Evans Co., 51 F.3d 64 (7th Circ. 1995), stating:

> All that Russell offered to meet this burden were his deposition and a subsequent affidavit designed, it appears, to retract or explain away concessions that he had made in his deposition.  We have been highly critical of efforts to patch up a party's deposition with his own subsequent affidavit.  E.g., Pries v. Honda Motor Co., 31 F.3d 543, 545 (7th Cir. 1994); Lovejoy Electronics, Inc. V. O'Berto, 873 F.2d 1001, 1005 (7th Cir. 1989); Adelman-Tremblay v. Jewel Cos., 859 F.2d 517, 520-21 (7th Cir.1988); Diliberti v. United States, 817 F.2d 1259, 1263 (7th Cir. 1987); see also Wilson v. Westinghouse Electric Corp., 838 F.2d 286, 289 (8th Cir. 1988).  Almost all affidavits submitted in litigation are drafted by lawyers rather than by affiants, DF Activities Corp. V. Brown, 851 F.2d 920, 923 (7th Cir. 1988); Visser v. Packer Engineering Associates, Inc., 924 F.2d 655 (7th Cir. 1991) (enbanc), and a comparison of the diction of Russell's deposition with that of the affidavit makes clear that his affidavit is no exception.  Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy.  Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th Cir. 1993); Adelman-Tremblay v. Jewel Cos., supra, 859 F.2d at 520-21; Babrocky v. Jewel Food Co., 773 F.2d 857, 861-62 (7th Cir. 1985).

### IV.

### APPLICABLE LAW

A plaintiff asserting a claim under the FLSA has the burden of proving by a preponderance of the evidence that he or she performed work for which she was not compensated.  White v. Baptist Memorial Health, 699 F.3d 869 (6th Cir. 2012).

### A.     The Defendant Did Not Violate the FLSA by Using a Time Clock that Rounds Up and Down

The plaintiffs' Complaint alleges that defendant violated the FLSA because defendant utilized a time clock that rounds.  The problem with this allegation is that a time clock that rounds is not a violation of the FLSA.

It appears, from a review of plaintiffs' declarations, that plaintiffs may have now abandoned their claim that the defendant's time clock somehow illegally rounded their work time because this is never mentioned in plaintiffs' declarations. However, while it appears that plaintiffs' claim may no longer be pursuing this claim, defendant, nevertheless, deems it important to move for Partial Summary Judgment on this issue because the practice is entirely legal.

> *"Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that ... it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.*

29 C.F.R. §785.48 (b).

"An employer's rounding practices comply with §785.48(b) if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment." East v. Bullock's, Inc., 34 F.Supp.2d 1176, 1184 (D.Ariz.1998) (granting summary judgment in employer's favor where "evidence show[ed] that [employer's] rounding system may not credit employees for all the time actually worked, but it also credits employees for time not actually worked" so that the employer's "rounding practices average[d] out sufficiently to comply with §785.48(b)"); See also Contini v. United Trophy Mfg., 2007 WL 1696030, at *3 (M.D.Fla. June 12, 2007) (granting employer's motion for summary judgment where the "[employer], throughout [the employee's] employment, [used] a consistent policy as to the rounding of clocking-in and clocking-out, which [was] both fair and evenly applied to all employees.").

In this case, defendant's time clock consistently rounded up or rounded down and in no way favored overpayment or underpayment. (See Exhibit 12.)  Moreover, in a recent audit, the Department of Labor found no violation by defendant with respect to defendant's time clock.

Thus, the allegations in plaintiffs' Complaint regarding defendant's rounding practices do not allege an FLSA violation and defendant should be granted Partial Summary Judgment on this issue.

**B.**	**The Defendant Did Not Violate the FLSA by Using an Automatic Meal Deduction System**

    a)	<u>An automatic meal deduction system is lawful under the FLSA</u>

An automatic meal deduction system is lawful under the FLSA.  <u>White v. Baptist Memorial Health Care Corp.</u>, 699 F.3d 869 (6th Cir. 2012); <u>Hill v. United States</u>, 751 F.2d 810 (6th Cir. 1984).  The defendant should be granted Partial Summary Judgment on the claim that it improperly utilized an automatic meal deduction system.

    b)	<u>There is no genuine factual issue tending to prove that defendant knew or should have known that any plaintiff was working through lunch without compensation.</u>

In order to recover, the employee has the burden of proving that he or she worked without a lunch break and that the employer knew or had reason to know the employee was actually working without a lunch break.  <u>White v. Baptist Memorial Health Care Corp.</u>, 699 F.3d 869 (6th Cir. 2012).

This type of FLSA claim is similar to an unpaid overtime claim in the sense that the employee is claiming non-payment for work done.  <u>White v. Baptist Memorial Health Care Corp.</u>, 699 F.3d 869 (6th Cir. 2012).

Where, as here, the employer had a policy requiring the employee to notify the employer that he or she had worked through lunch, the employee has the burden of proving that he or she, in fact, reported the additional compensable time to his or her supervisor or that the employer had reason to know that the time reflected on the time card was incorrect.  White v. Baptist Memorial Health Care Corp., 699 F.3d 869 (6th Cir. 2012).

In the case before the Court, the defendant has provided Affidavits from a total of sixteen (16) supervisory employees demonstrating that the plaintiffs' lunch break claims are untrue.  (See Exhibits 12-27.)  In addition, the plaintiffs' responses to discovery reflect that the plaintiffs could not cite even one specific instance where they had asked a supervisor to modify their time card and the hospital had failed to do so.  (See Exhibits 6-11.)

Even if this Court were to find that a disputed question of fact exists on the issue of whether one or more plaintiffs worked through lunch without proper compensation, plaintiffs have completely failed to state any facts that would show that defendant *knew or should have known* that this was occurring.  See White v. Baptist Memorial Health Care Corp., 699 F.3d 869, 873 (6th Cir. 2012) (An important issue is "whether Baptist knew or had reason to know it was not compensating White for working during her meal breaks.").   In this case due to the nature of their work, employees often took their lunch break at odd times as the workflow permitted.  It was up to the employee to follow procedure and file a claim if they missed lunch.  There simply is not a shred of evidence in plaintiffs' declarations that would tend to show that defendant knew or should have known that any of the plaintiffs were working through lunch without compensation.

In order to avoid Summary Judgment, the plaintiffs would have to come forward with some specific facts to support their conclusory allegations.  As noted in the defendant's Case Background narrative above, the plaintiffs' Complaint, the plaintiffs' responses to discovery, and the

plaintiffs' declarations are an unending hodgepodge of inconsistency, which are patently inadequate to meet plaintiffs' burden of proof, because plaintiffs have done nothing more than provide affidavits drafted by legal counsel which contradict their discovery responses. Russell v. ACME-Evans Co., S1F.3d 67 (7th Cir. 1995) It simply cannot be said that even one of the plaintiffs has provided a clear, coherent, consistent, factual statement that they were the victim of any lunch break practice by defendant that violated the FLSA.

Beyond that, the applicable damage rules require that each plaintiff provide some reasonable basis upon which to calculate plaintiffs' damages. Marine Services Unlimited, Inc. v. Rakes, 323 Ark. 757, 766, 918 S.W.2d 132 (1996) ("The burden of proving damages rests on the party claiming them and the proof must consist of facts, not speculation"); Minerva Enterprises, Inc. v. Howlett, 308 Ark. 291, 298, 824 S.W.2d 377 (1992) ("The party claiming damages has the burden of proving those damages beyond speculation").

Thus, plaintiffs cannot recover unless plaintiffs can state specific facts demonstrating a reliable method of calculating their damages. The plaintiffs can't meet this burden if they can't state how often they worked through lunch, how often they notified their supervisor and how often the hospital failed to make an adjustment. Plaintiffs' discovery responses demonstrate that plaintiffs cannot meet this standard.

### C.     There is Insufficient Factual Support for Plaintiffs' General Allegations that They Work More Than 40 Hours Per Week Without Being Paid Overtime.

   a)     The is no genuine factual issue tending to prove the plaintiffs' claims that they worked more than 40 hours per week without being compensated.

In the Complaint, several plaintiffs make a general allegation that they worked more than 40 hours per week without compensation. However, in the declarations, all of the plaintiffs except for Butcher and Stovall appear to abandon this allegation except as it relates to the lunch

break allegations.

However, neither Butcher's declaration nor Stovall's declaration explains how or when they worked over 40 hours without compensation.  The statements by Butcher and Stovall are mere conclusions and, therefore, are not adequate. Wheeler v. Baxter Healthcare Corp., 2011 WL 5402446, *3 (E.D. Ark. 2011) (Holmes L.). In order to avoid Summary Judgment, the plaintiffs would have to come forward with some specific facts to support their conclusory allegations, something they have not, and cannot do.

Beyond that, the applicable damage rules require that each plaintiff provide some reasonable basis upon which to calculate plaintiffs' damages.  Marine Services Unlimited, Inc. v. Rakes, 323 Ark. 757, 766, 918, S.W. 2d 132 (1996) ("The burden of proving damages rests on the party claiming them and the proof must consist of facts, not speculation"); Minerva Enterprises, Inc. v. Howlett, 308 Ark. 291, 298, 824 S.W. 2d 377 (1992) ("The party claiming damages has the burden of proving those damages beyond speculation").   A conclusory statement by an employee that they worked more than 40 hours more week without compensation does not meet this standard.

b)      There is no genuine factual issue tending to prove that plaintiffs clocked in early or continued to work after clocking out.

The defendant has provided sworn testimony from a total of sixteen (16) supervisory employees stating that the hospital had a policy that all hourly, non-exempt employees were responsible for clocking in at the beginning of their shift and clocking out at the end of their shift.

The defendant has provided sworn testimony from a total of sixteen (16) supervisory employees stating that they were not aware of any instance where an hourly, non-exempt employee started work before they clocked in or continued to work late after they clocked out.

The defendant has proved sworn testimony from a total of sixteen (16) supervisory employees stating that, if an employee had started work before clocking in or continued to work after clocking out, then it would have been the employee's responsibility to report that event to their supervisor, so an adjustment could be made.

Finally, the defendant has provided sworn testimony from a total of sixteen (16) supervisory employees stating that they are not aware of any instance where any employee ever requested such an adjustment or where the hospital failed to make such an adjustment upon request.

These affidavits shift the burden to the plaintiffs to come forward with specific facts that they either notified the employer that an adjustment needed to be made or that the hospital had reason to know an adjustment needed to be made.

Plaintiffs' responses to discovery demonstrate that plaintiffs cannot list even one specific instance where notification was given to defendant.  Beyond that, defendant does not believe plaintiffs can point to any fact that would put defendant on notice that any plaintiff was not following the normal policy of clocking in upon arrival and clocking out upon leaving.

### V.

WHEREFORE, the defendant, Delta Memorial Hospital, prays that this Court grant its Motion for Summary Judgment for costs, and for all other proper relief.

RESPECTFULLY SUBMITTED,


GILL LAW FIRM, PLC
Post Office Box 70
Dumas, AR 71639
(870) 382-4988 Telephone
(870) 382-4992 Facsimile
gillfirm@centurytel.net

By: _____
B. Page Gill (ABN 2012158)

ATTORNEYS FOR THE DEFENDANT


CERTIFICATE OF SERVICE

I, B. Page Gill, attorney for the defendant, do hereby certify that a true and correct copy of the foregoing document was served via electronic mail and via U. S. Postal Service to the following:

Maryna O. Jackson, Esq.
John T. Holleman, Esq.
HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, AR 72201
jholleman@johnholleman.net
maryna@johnholleman.net

William B. Ryan, Esq.
Bryce W. Ashby, Esq.
DONATI LAW FIRM, LLP
1545 Union Avenue
Memphis, TN 38104
billy@donatilawfirm.com
bryce@donatilawfirm.com

on this 20 day of February , 2013 .

_____
B. Page Gill